IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE DARBY | : | CIVIL ACTION |
| | : | NO. 15-4207 |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY | : | |

O'NEILL, J.                                              July 12, 2016

## MEMORANDUM

Plaintiff Maurice Darby has sued defendant Temple University alleging employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. and discrimination and retaliation under the Philadelphia Fair Practices Ordinance (PFPO), Philadelphia Code, § 9-1101, et seq.  Defendant has moved to dismiss plaintiff's complaint (Dkt. No. 1) under Federal Rule of Civil Procedure 12(b)(6).  Now before me are defendant's motion to dismiss (Dkt. No. 3) and plaintiff's response (Dkt. No. 6).  For the following reasons, I will grant defendant's motion and dismiss plaintiff's claims with leave to amend.

## BACKGROUND

Plaintiff alleges that he is a Baptist male.  Dkt. No. 1 at ¶¶ 3, 16.  He contends that he worked for defendant for over twenty-five years, most recently as a Housekeeper.  Id. at ¶¶ 5, 25.  Plaintiff alleges that on March 13, 2014 another Temple employee, David Chesney, "sidled up to [p]laintiff and placed his hand on [p]laintiff's left buttock" while the two were on break.  Id. at ¶ 6.  Plaintiff claims that he reported the incident to defendant's Vice President of Labor Relations on March 17, 2014 and his Union Representative on March 18, 2014.  Id. at ¶¶ 8, 10.  He alleges that he also met with Human Resources on March 20, 2014 and filed a police report.  Id. at ¶¶ 11-12.

Plaintiff maintains that on March 18, 2014 he was taken to the emergency room "due to his ongoing mental distress about the incident." Id. at ¶ 9.  He contends that he suffered from depression and was being treated for depression, anxiety, insomnia, high blood pressure and heart palpitations following the incident with Chesney.  See id. at ¶¶ 13-14.  As a result, plaintiff received a grant of FMLA leave in late March 2014 and "was to return to work on or before June 9, 2014." Id. at ¶¶ 17, 33.  Plaintiff alleges that his medical provider sent reports to defendant regarding plaintiff's ability to return to work, the last of which was dated May 28, 2014 and contained a recommendation that plaintiff could "return to work on June 9, 2014, without restriction." Id. at ¶ 18.

Plaintiff alleges that on May 5, 2014 he had a meeting to discuss his complaint about Chesney with the Philadelphia police. Id. at ¶ 19.  He maintains that as he was en route to Temple's campus, he saw Chesney and "questioned [him]" about the March 13, 2014 incident. Id. at ¶¶ 19-20.  Plaintiff contends that Chesney "made no response" and then "falsely claimed to [defendant] that [p]laintiff had threatened him." Id. at ¶¶ 20-21.

Plaintiff asserts that defendant concluded its investigation into his complaint on May 9, 2014.  See id. at ¶¶ 23-24.  He alleges that on May 20, 2014 defendant notified him that it would review Chesney's complaint. Id. at ¶ 24.  Plaintiff contends that on May 29, 2014, two days following the review, defendant sent him a termination letter informing him that "[h]e had violated the Temple University Rules of Conduct due to threatening behavior or causing disturbance, and harassment or unwelcome behavior." Id. at ¶¶ 24-25.

On or about June 2, 2014, plaintiff dual filed a complaint of discrimination with the Equal Employment Opportunity Commission and the City of Philadelphia Commission on

Human Relations.  Id. at ¶ 2.  Plaintiff contends that he has his exhausted federal administrative remedies and received a Right-to-Sue letter from the EEOC on April 28, 2015.  Id.

Plaintiff filed his complaint on July 28, 2015.  He asserts three counts against defendant.[1] Count I alleges religion-based discrimination and retaliation under Title VII.  Id. at ¶¶ 29-30. Count II alleges retaliation under the FMLA.  Id. at ¶ 35.  Count III alleges sex- and religion-based discrimination and retaliation under the PFPO.  Id. at ¶¶ 37-38.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  This "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially

---

[1]     In his response to defendant's motion, plaintiff voluntarily withdraws Count IV of his complaint, a claim for workers' compensation retaliation.  Dkt. No. 6 at ECF p. 2.  Thus, I need not address defendant's argument seeking to dismiss this claim.

plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556

U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in

light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more

than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement

with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I.    Title VII Claims

#### A.    Discrimination Based on Religion

Plaintiff claims that defendant violated Title VII by terminating him because of his

religion.  To state a claim under Title VII for employment discrimination, plaintiff must allege

that:  (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he

suffered an adverse employment action; and (4) the adverse employment action occurred under

circumstances that give rise to an inference of discrimination.  McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802 (1973).  Defendant contends that plaintiff has failed to plead any facts

that could establish the fourth element of his prima facie case.  Dkt. No. 3 at ECF p. 7.

First, defendant argues that plaintiff does not allege facts to suggest that anyone involved in his termination was aware of plaintiff's religion.  The Court of Appeals has required "that employees [have] informed their employers of their religious beliefs prior to the alleged discriminatory action" to state a claim for religion-based discrimination because an "employee's religion . . . is often unknown to the employer."  Morrison v. Access Servs., Inc., No. 14-4685, 2014 WL 5286604, at *4 (E.D. Pa. Oct. 15, 2014), quoting Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

Plaintiff does not allege that defendant was aware of his religious beliefs prior to his termination.  Instead, plaintiff argues that because he worked at Temple for 25 years and it is unclear who was involved in his termination, "it is entirely possible" that decision-makers were aware of his religion.  Dkt. No. 6 at ECF p. 8.  However, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "nudge his or her claims across the line from conceivable to plausible."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 570.  The length of plaintiff's employment alone is insufficient to raise an inference that defendant was aware of plaintiff's religious beliefs prior to his termination.

Even if it were, defendant argues that plaintiff cannot use his co-worker Chesney as a comparator to raise an inference of discrimination because he and Chesney allegedly engaged in different misconduct.  Discrimination may be inferred if defendant treated "similarly situated" individuals not within plaintiff's protected class more favorably than him.  See Wilcher v. Postmaster Gen., 441 F. App'x 879, 881 (3d Cir. 2011).  In assessing similarity, relevant factors include:  "the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct . . . ."  Id. at 882, citing Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) and Burks v. Wis. Dep't of Transp., 464 F.3d 744, 751 (7th Cir. 2006).

"[P]urported comparators must have committed offenses of 'comparable seriousness.'" <u>Opsatnik</u> <u>v. Norfolk S. Corp.</u>, 335 F. App'x 220, 223 (3d Cir. 2009) (internal citations omitted).

Plaintiff alleges that his termination raises an inference of religion-based discrimination because "someone outside his class [was] treated more favorably." Dkt. No. 1 at ¶ 29. However, plaintiff's complaint does not contain specific facts to show that he and Chesney are similarly situated. Plaintiff does not allege any facts to show that he and Chesney had similar responsibilities or shared supervisors and decision-makers. Nor does plaintiff allege that Chesney was under investigation for anything other than the alleged inappropriate touching, which is not of "comparable seriousness" to an alleged verbal threat.[2] <u>See</u> <u>Opsatnik</u>, 335 F. App'x at 222-23 ("While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'"), <u>quoting</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). Without such allegations, I cannot use comparator evidence to infer discrimination. Thus, I will dismiss plaintiff's Title VII discrimination claim with leave to amend if he can allege sufficient facts upon which to state a claim.[3]

**B.     Retaliation**

Plaintiff claims that defendant violated Title VII by retaliating against him for opposing unlawful discrimination. To state a claim under Title VII for retaliation, plaintiff must allege

---

[2]      Plaintiff argues in his brief that he and Chesney did engage in similar misconduct. Plaintiff contends that in the email he sent to defendant's Vice President of Labor Relations reporting Chesney's alleged inappropriate touching, he also reported a threat that Chesney made against him by showing him a picture of a gun. Dkt. No. 6 at ECF p. 7. Plaintiff argues that he has therefore sufficiently alleged that Chesney also violated Temple's threatening behavior rule. <u>Id.</u> Plaintiff does not include this allegation in his complaint. Allegations appearing solely in a brief cannot amend plaintiff's complaint. <u>See</u> <u>Commw. of Pa. ex rel. Zimmerman v. PepsiCo,</u> <u>Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988). Thus, I cannot consider this allegation in deciding whether to dismiss plaintiff's claim.

[3]      Courts "should freely grant leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a).

that:  (1) he engaged in activity protected by Title VII; (2) his employer took an adverse

employment action against him; and (3) there was a causal connection between his participation

in the protected activity and the adverse employment action.  Moore v. City of Phila., 461 F.3d

331, 340-41 (3d Cir. 2006) (citation omitted).  "Protected activity under Title VII includes

opposition to unlawful discrimination under Title VII" when the employee has "an 'objectively

reasonable' belief that the activity s/he opposes constitutes unlawful discrimination under Title

VII."  Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 322 (3d Cir. 2008), citing

Moore, 461 F.3d at 341.

Defendant argues that plaintiff did not engage in protected activity because plaintiff does

not allege that any of his complaints characterized Chesney's "offensive and unwelcome

touching" as discriminatory.  Dkt. No. 3 at ECF p. 9.  A general complaint of harassment or

unfair treatment is not a protected activity if the complaint does not explicitly or implicitly allege

that the underlying action was discriminatory.  See Barber v. CSX Distrib. Servs., 68 F.3d 694,

701-02 (3d Cir. 1995) (holding that a letter to plaintiff's Human Resources Department was not a

protected activity because "it [did] not specifically complain about age discrimination"); Davis v.

City of Newark, 417 F. App'x 201, 203 (3d Cir. 2011) (holding that plaintiff did not engage in

protected activity where her complaint "failed to identify any conduct proscribed by Title VII").

To support his retaliation claim, plaintiff relies on conclusory allegations that defendant

"retaliated against [p]laintiff due to his opposing unlawful discrimination."  Dkt. No. 1 at ¶ 30.

Plaintiff alleges no facts to suggest that his complaints to defendant's Vice President of Labor

Relations, his Union Representative or Human Resources identified religious discrimination as

the basis for Chesney's conduct.[4]   Accordingly, plaintiff has not alleged sufficient facts to

suggest that he engaged in protected conduct.   Thus, I will dismiss plaintiff's Title VII retaliation

claim with leave to amend if he can sufficiently allege that he engaged in protected activity.[5]

## II.   FMLA Retaliation

Plaintiff claims that defendant violated the FMLA by retaliating against him for

exercising his rights to medical leave.   To state a claim for FMLA retaliation, plaintiff must

allege that:  (1) he took FMLA leave; (2) he suffered an adverse employment decision; and (3)

the adverse employment decision was causally related to the leave.   Greineder v. Masonic

Homes of the R.W. Grand Lodge, F & AM of Pa., No. 13-2376, 2014 WL 1632143, at *5 (E.D.

---

[4]      Defendant attaches to its motion an email that plaintiff sent to defendant's Vice
President of Human Relations reporting Chesney's alleged inappropriate touching.  Dkt. No. 3-2
at ECF p. 2.  "Courts may consider a document that a defendant attaches as an exhibit to a
motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are
based on the document" without converting a motion to dismiss to a motion for summary
judgment.  Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 781 (W.D. Pa. 2000), citing Pension
Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).
         Plaintiff does not appear to dispute the email's authenticity, also relying on its contents to
support his argument in his response to defendants' motion to dismiss.  See Dkt. No. 6 at ECF p
7.  But even if I were to consider it, the email would not change my conclusion that plaintiff has
not sufficiently alleged a claim for Title VII retaliation.  His complaint about Chesney cannot be
read as opposition to unlawful discrimination, as it includes no mention of his belief that he had
been subjected to discriminatory treatment.  See Dkt. No. 3-2 at ECF p. 2.
[5]      Plaintiff must plead sufficient facts to allege a causal nexus between his protected
activity and his termination.  Two main factors guide this inquiry:  timing and evidence of
ongoing antagonism.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).
Further, "[k]nowledge of an employee's protected conduct is an essential element of establishing
a causal connection."  Warfield v. SEPTA, 460 F. App'x 127, 132 (3d Cir. 2012), citing Clark
Cnty. Sch. Dist. Breeden, 532 U.S. 268, 273 (2001); see also Wadhwa v. Sec'y, Dept. of
Veterans Affairs, 505 F. App'x 209, 215-16 (3d Cir. 2012) (affirming the dismissal of a
plaintiff's retaliation claim where the plaintiff did not identify who knew of his protected
activity, who was responsible for the adverse employment decision taken against him and the
connection between his protected activity and the adverse employment decision).  Here, plaintiff
has not alleged that anyone involved in his termination was aware of his protected activity or a
causal connection between the two.

Pa. Apr. 23, 2014), citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d. Cir. 2004).

Defendant argues that plaintiff has not alleged facts to suggest a retaliatory animus or causal connection between plaintiff's FMLA leave and his termination.  Plaintiff responds that there is temporal proximity between the date of his medical provider's last report and the date of his termination letter.  Dkt. No. 6 at ECF p. 10.  However, plaintiff does not allege that he asked defendant to give him any extension of his original medical leave, which defendant allegedly granted until June 9, 2014.  Dkt. No. 1 at ¶ 33.  Despite plaintiff's allegation that "[his] medical provider continued to extend" his return to work date, under the allegations in the complaint, the purported extensions never surpassed June 9, 2014, plaintiff's original return to work date.  See id. at ¶¶ 18, 27, 33.  I cannot use the medical report to infer causation because it cannot be read as an attempt to request additional FMLA leave or exercise FMLA rights.  See Greineder, 2014 WL 1632143, at *5 (noting that courts may infer causation if there is temporal proximity between a request for FMLA leave and an adverse employment decision), citing William Paterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001)  Thus, I will dismiss plaintiff's FMLA retaliation claim with leave to amend if he can sufficiently allege a causal connection between his exercise of FMLA rights and his termination.

## III.    PFPO Claims

Finally, plaintiff claims that defendant violated the PFPO by discriminating against him on the basis of sex and religion and by retaliating against him for opposing unlawful discrimination and/or because of his disability.  First, plaintiff does not allege facts in his complaint that would support a claim for discrimination on the basis of sex or a claim for retaliation because of his disability.  Moreover, plaintiff does not address either of these claims

in his response to defendant's motion to dismiss.  Further, PFPO claims are generally evaluated under the same legal framework as plaintiff's Title VII claims.  <u>See</u> <u>Hong v. Temple University</u>, No. 98-4899, 2000 WL 694764, at *9 (E.D. Pa. May 30, 2000).  For the same reasons that I find plaintiff has not sufficiently alleged a claim under Title VII, I find that he has not sufficiently alleged a claim under the PFPO for retaliation or for discrimination based on his religion.  I will dismiss plaintiff's PFPO claims with leave to amend if he can plead sufficient facts upon which to state a claim.

An appropriate Order follows.