IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE DARBY, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 15-4207 |
| TEMPLE UNIVERSITY, | |
| Defendant. | |

**Goldberg, J.**                                                                                                                            August 14, 2018

## MEMORANDUM OPINION

In this employment discrimination case, Plaintiff, Maurice Darby, alleges that Defendant, Temple University, terminated his employment because he was a Baptist, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code, § 9-1101, *et seq.* Plaintiff also brings a claim for retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

Presently before me is Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion will be granted as to Plaintiff's Title VII discrimination claim, PFPO discrimination claim, and FMLA retaliation claim.[1]

---

[1] This case was transferred to me from the docket of the late Honorable Thomas N. O'Neill on August 23, 2017. Prior to this transfer, on October 24, 2016, Judge O'Neill dismissed Plaintiff's claims of retaliation under Title VII and the PFPO. In those claims, Plaintiff alleged that Defendant violated Title VII and the PFPO by retaliating against him for lodging a complaint of discrimination. (Doc. No. 14.)

## I.     FACTUAL RECORD

Plaintiff claims that his employment with Defendant was terminated because he was a Baptist and in retaliation for taking FMLA leave. In his opposition to Defendant's Motion, Plaintiff largely relies on the allegations in his Amended Complaint, which I will review here.

Plaintiff alleges that, during the relevant time period, he was a Baptist. Plaintiff's Amended Complaint details that he wore a neckchain with a cross around his neck, which was "frequently" commented on by his co-workers, talked about attending church services when discussing his weekend with his co-workers and management, read the bible on his cell phone during breaks at work, and attended church services with his former supervisor's brother.

Plaintiff asserts that in February 2014, he was threatened at a staff meeting by a co-worker named Charles Wilson, who was Muslim and known by his Muslim name. According to Plaintiff, Mr. Wilson was not disciplined. Plaintiff alleges that on March 13, 2014, he was inappropriately touched by another co-worker, David Chesney, who was known by his Muslim name. Plaintiff contends he reported this incident to Defendant's Vice President of Labor Relations, his Union representative, and the police. Plaintiff claims that he suffered mental distress as a result of the inappropriate touching, and that he was placed on FMLA leave in March of 2014 because of his "ongoing mental distress." Plaintiff's FMLA leave was originally set to expire on May 1, 2014, but was extended to May 20, 2014. The Amended Complaint states that on May 28, 2014, Plaintiff's doctor informed Defendant that Plaintiff had been diagnosed with Post-Traumatic Stress Disorder and Major Depressive Disorder, and recommended that Plaintiff's FMLA leave be extended to June 8, 2014.

The Amended Complaint also alleges that on May 5, 2014, while he was on FMLA leave, Plaintiff had a meeting scheduled with the police about his complaint regarding Mr. Chesney.

He claims that while on his way to pick up lunch before the meeting, he encountered Mr. Chesney at a traffic light and "went and questioned" him about why he had touched him. According to Plaintiff, Mr. Chesney then falsely claimed to Defendant that Plaintiff had threatened him. Plaintiff alleges that his complaint against Mr. Chesney was closed four days after Mr. Chesney made a complaint about him. Plaintiff subsequently received notice that there would be a review of his conduct based on Mr. Chesney's complaint, and on May 29, 2014, he received a letter indicating that Defendant had found he violated the Rules of Conduct and terminated his employment. Plaintiff avers that Defendant's proffered reason for terminating his employment was pretextual.

In opposition to Defendant's Motion, Plaintiff asserts only that affidavits and statements provided by Defendant are subject to a credibility determination and cannot support summary judgment. Plaintiff has not provided any evidence contradicting the affidavits or statements offered by Defendant to suggest they are inaccurate. In an attempt to create a factual dispute, Plaintiff points to allegations in his Amended Complaint and a handful of other documents as evidence of discrimination and retaliation. None of the documents to which Plaintiff cites suggest discrimination or retaliation, and Plaintiff "cannot simply reassert factually unsupported allegations contained in its pleadings." Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

Defendant presents the following facts, supported by evidence in the record, that it contends mandate summary judgment in its favor:

Plaintiff began working for Defendant on March 13, 1989. His most recent position with Defendant was as a housekeeper. Plaintiff had a "history" of disciplinary issues while working for Defendant, including confrontations with staff, allegations against him by co-workers, and an

3

allegation of harassment by a student. (Def.'s SOF ¶¶ 1-2; Id., Exs. A, C.) Plaintiff disputes only the characterization of his disciplinary history as "longstanding." (Pl.'s SOF ¶ 2.)

Citing to affidavits of three of Defendant's employees, Defendant urges that there is no evidence in the record that Plaintiff's co-workers or management knew of Plaintiff's religious affiliation as Baptist during the time he was employed by Defendant. (Def.'s SOF ¶¶ 3-4; Id., Exs. A, C, D, E.) Plaintiff's only response is that the affidavits that Defendant relies upon for record support are "self-serving" and subject to a credibility determination by a jury. (Pl.'s SOF ¶ 4.) Because Plaintiff has not pointed to any evidence contradicting the affidavits regarding Defendant's knowledge of his religion, Defendant's proffered facts on this topic are undisputed.

Defendant states that it has no records, documents, incident reports, or complaints establishing the February 2014 incident involving Plaintiff and Mr. Wilson. In an affidavit, Plaintiff's supervisor, Darlene Turner, confirms that such an incident never occurred. Additionally, Mr. Wilson told Defendant's Workers' Compensation and Absence Management Director, Thomas Johnston, that the incident did not occur. Defendant also points out that there is no evidence that Mr. Wilson's religious affiliation was known to Defendant. (Def.'s SOF ¶¶ 5-6, 5 n.3; Id., Exs. A, C, D.) Plaintiff disputes Defendant's assertion that Ms. Turner confirmed no incident occurred between Plaintiff and Mr. Wilson, again arguing that Ms. Turner's affidavit is self-serving. Plaintiff also asserts that Mr. Wilson was known by his "Muslim name," Raheim, but cites only to his Amended Complaint, and again argues that the affidavit Defendant relies upon regarding the absence of knowledge about Mr. Wilson's religion is self-serving and subject to a credibility determination. (Pl.'s SOF ¶¶ 5-6; Am. Compl. ¶¶ 9-11.) Plaintiff has not pointed to any evidence contradicting the affidavit of Ms. Turner or Mr.

4

Johnston regarding the alleged threats by Mr. Wilson, and thus I will also treat these facts as undisputed.

Defendant acknowledges that on March 17, 2014, Plaintiff reported to Sharon Boyle, Defendant's Vice President of Human Resources and Labor Relations, that a co-worker, Mr. Chesney, had "placed his hand on Plaintiff's left buttock." Plaintiff filed a Police Incident Report with the Temple Police Department on March 19, 2014, alleging that Mr. Chesney had grabbed "his buttocks." On March 20, 2014, Defendant met with Plaintiff to discuss his allegations against Mr. Chesney. Defendant's Assistant Director of Equal Opportunity Compliance, Tracey Hamilton, subsequently began an investigation into Plaintiff's complaint, interviewing Plaintiff and Mr. Chesney, and reviewing Plaintiff's Police Incident Report. Ms. Hamilton also consulted the Temple Police Department about its investigation, which had concluded that Plaintiff's allegations were unfounded. On or around May 9, 2014, Ms. Hamilton had completed the investigation and concluded there was "no reasonable basis" to believe that a violation of Defendant's policies had occurred. As such, as Ms. Hamilton states in her affidavit, Defendant did not take any disciplinary action against Mr. Chesney. Ms. Hamilton also submits in her affidavit that she had no knowledge of Mr. Chesney or Plaintiff's religious affiliations before making her determination. (Def.'s SOF ¶¶ 7-10, 10 n.4, 12-14; Id., Exs. F, A, E, G, H.)

In response, Plaintiff cites to and contests Mr. Chesney's statement to Ms. Hamilton, contending Ms. Hamilton did not interview Mr. Chesney but only "wrote up [his] alleged 'statement,'" and that the statement is self-serving and subject to a credibility determination. Plaintiff also contends that Ms. Hamilton is an interested witness and her affidavit is subject to a credibility determination. (Pl.'s SOF ¶¶ 10, 14; Id., Ex. B.) Again, Plaintiff has not pointed to

any evidence contradicting Mr. Chesney's statement or Ms. Hamilton's affidavit, thus these facts are undisputed.

Defendant acknowledges that following the alleged incident with Mr. Chesney, Plaintiff sought medical treatment and was approved for leave under the FMLA from late March of 2014 through June 8, 2014 (to return to work on June 9, 2014). His leave was extended twice to the June date. (Def.'s SOF ¶ 11; Ex. A; Pl.'s SOF, Ex. C.)

On May 5, 2014, while out on FMLA leave, Plaintiff "returned" to Defendant's campus and, according to Defendant, instigated an "encounter" with Mr. Chesney. Mr. Johnston, Defendant's Director of Workers' Compensation and Absence Management, was notified that Mr. Chesney had filed a complaint regarding Plaintiff's threatening and harassing behavior toward him. Because the incident occurred while Plaintiff was out on FMLA leave, the investigation fell within the purview of Mr. Johnston's office. As part of the investigation, Mr. Johnston interviewed Plaintiff, Mr. Chesney, and Dara Rimes (Defendant's Coordinator of Residence Halls-Main). He also reviewed the Temple Police Department incident report dated May 5, 2014, the Police Department's investigation interview records, and video surveillance footage of the confrontation, and discussed the incident with the Police Department. (Def.'s SOF ¶¶ 15-17; Id., Exs. A, I, C.)

Plaintiff responds that he did not "return" to Defendant's campus or instigate an encounter with Mr. Chesney, but was passing through on his way to pick up lunch when he saw Mr. Chesney. He contends that his statement to Mr. Chesney was not harassing or threatening, and that no action of his violated any policy of Defendant, which apply only to work-related incidents and not to conduct between two persons on a public street when one is on FMLA leave. Plaintiff also contends that Mr. Johnston's affidavit is a statement of an interested party and

subject to a credibility determination. (Pl.'s SOF ¶¶ 15-17; Id., Exs. D, E.) Regarding Mr. Johnston's affidavit, Plaintiff has not pointed to any evidence contradicting his statement. Additionally, whether or not Plaintiff's presence on Defendant's campus can be characterized as a "return" is immaterial.

Defendant also proffers that on or about May 28, 2014, Defendant received a letter from Plaintiff's doctor recommending that Plaintiff's FMLA leave be extended to June 8, 2014, and that he return to work on June 9, 2018. Defendant states that the decision to terminate Plaintiff's employment was unrelated to Plaintiff's doctor's recommendation that his FMLA leave be extended. (Def.'s SOF ¶ 18; Exs. A, C.) Without any support from the record, Plaintiff responds that the decision to terminate his employment was related to the extension of his FMLA leave. (Pl.'s SOF ¶ 18; Id., Ex. C.) Plaintiff cites only to a prior letter from his doctor, pointing out that Defendant had received that letter on May 15, 2014 indicating that Plaintiff was scheduled for a complete psychiatric evaluation on May 22, 2014 and recommending that his leave be extended to May 22, 2014.

On or about May 30, 2014, Mr. Johnston had completed his investigation of Mr. Chesney's complaint and sent Plaintiff a letter informing him that his employment status was terminated as of May 29, 2014 for violation of Defendant's University Rules of Conduct. Citing to Mr. Johnston's affidavit, Defendant states that Mr. Johnston was the final decision maker with regard to Plaintiff's termination, no other individual encouraged him to terminate Plaintiff, and Mr. Johnston's decision to terminate Plaintiff was based solely on Plaintiff's violation of Defendant's University Rules of Conduct and was not related to Plaintiff's religious affiliation or his request for an extension of FMLA leave. Again citing to Mr. Johnston's affidavit, Defendant points out that Mr. Johnston had no knowledge of Plaintiff's religious affiliation when he made

the decision to terminate his employment. Defendant contends that Plaintiff never "explicitly informed" anyone at Defendant that he was a Baptist, including Mr. Johnston who issued his termination. (Def.'s SOF ¶¶ 19-24; Id., Exs. A, C, J.)

Plaintiff again responds that Mr. Johnston is an interested witness, and that whether he was the final decision maker is a credibility determination. Plaintiff also challenges Mr. Johnston's statement that his decision to terminate him was not due to Plaintiff's religious affiliation or request for an extension of FMLA leave. Plaintiff denies that he never informed anyone at Defendant that he was a Baptist. (Pl.'s SOF ¶¶ 20-23; Id., Exs. E, C; Am. Compl. ¶¶ 6, 8.) Plaintiff has not pointed to any evidence contradicting Mr. Johnston's affidavit and has not provided any evidence that he informed someone at Defendant of his religious affiliation. Thus these facts are also undisputed.

On or about June 2, 2014, Plaintiff filed a complaint with the Philadelphia Commission on Human Relations ("PCHR") and the United States Equal Employment Opportunity Commission alleging that Mr. Chesney sexually harassed him, he was harassed on the basis of his religion and/or sex, and Defendant retaliated against him because he complained of sexual harassment and/or because of his disability. Plaintiff's PCHR complaint was dismissed on or about November 21, 2014. (Def.'s SOF ¶¶ 26, 28; Id., Exs. A, K, L.)

Plaintiff also contends that the following undisputed material facts preclude summary judgment:

- Temple's Code of Conduct applies only to work-related conduct;

- Plaintiff was not working on May 5, 2014, but was on approved medical leave;

- The intersection of Broad and Diamond Streets (where the May 5, 2014 incident occurred) is a public road;

- Leroy C. Johnson is employed by Defendant and has a criminal record of assault. Mr. Johnson has not received any disciplinary action for his conduct outside of work;

- Mr. Chesney has not been disciplined by Defendant for touching Plaintiff in an offensive way;

- The investigation of Plaintiff's claim against Mr. Chesney for offensive touching lasted more than fifty days; and

- The investigation of Mr. Chesney's claim against Plaintiff lasted less than a week.

(Pl.'s SOF at pp. 7-8, ¶¶ 1-11.) Plaintiff does not provide any record cites for these alleged undisputed material facts.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id. To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c) (1).

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv.

Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). Rather, the court must consider the evidence, and all reasonable inferences that may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Id. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams, 891 F.2d at 460. The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249-50.

### III. ANALYSIS

#### A. Plaintiff's Title VII Claim

Title VII provides, in relevant part, that it is an unlawful employment practice for an employer "to discharge any individual because of such individual's religion." 42 U.S.C. § 2000e-2(a)(1). Claims of religious discrimination may involve either disparate treatment or

failure to accommodate. Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001). Plaintiff alleges disparate treatment.

Individual disparate treatment claims are subject to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, a plaintiff carries the initial burden of demonstrating a prima facie case of unlawful disability discrimination. If the plaintiff establishes his prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. Assuming that the employer is able to meet its "relatively light burden," the burden of production shifts back to the plaintiff who must then show, by a preponderance of the evidence, that the employer's proffered reason for the adverse employment action is pretextual. Showers v. Endoscopy Ctr. of Cent. Pennsylvania, LLC, 58 F. Supp. 3d 446, 460 (M.D. Pa. 2014) (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). While the burden of production may shift, the burden of persuasion always rests with the plaintiff. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759-60 n.3 (3d Cir. 2004).

Plaintiff has not pointed to any direct evidence of discrimination, therefore to state a prima facie case of discrimination, he must establish the following: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action dispute being qualified; and (4) the adverse employment action was under circumstances raising an inference of discrimination. See Collins v. Kimberly-Clark Pennsylvania, LLC, 247 F. Supp. 3d 571, 589 (E.D. Pa. 2017) (citing Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016)). An inference of discrimination "could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors

11

suggesting racial animus." Golod v. Bank of America Corp., 403 F. App'x 699, 703 n.2 (3d Cir. 2010).

However, to state a claim for religious discrimination, "employees [must have] informed their employers of their religious beliefs prior to the alleged discriminatory action" because, unlike other bases of discrimination claims like race or gender, an "employee's religion . . . is often unknown to the employer." Morrison v. Access Services, Inc., No. 14-4685, 2014 WL 5286604, at *4 (E.D. Pa. Oct. 15, 2014) (quoting Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996)).

Defendant concedes that the first three elements of the prima facie case are satisfied, but contends there is no evidence to establish the fourth element because there is no evidence Mr. Johnston knew Plaintiff's religious affiliation, nor is there evidence of a comparator.

I agree with Defendant that there is no evidence that Plaintiff's termination was under circumstances raising an inference of discrimination. In short, there is no evidence that anyone knew he was a Baptist. Plaintiff points to his Amended Complaint as evidence that his religion was known to his co-workers and management, however, this argument fails for several reasons. First, the Amended Complaint alleges only that Plaintiff wore a neckchain with a cross around his neck, which was allegedly commented on by co-workers, talked about going to church, read the Bible on his phone during his breaks, and attended church services with his former supervisor's brother. (See Am. Compl. ¶¶ 6-8.) These allegations do not establish that Plaintiff's co-workers or management at Defendant knew he was a Baptist, and Plaintiff has not pointed to any other evidence in the record. Importantly, these allegations do not demonstrate that Mr. Johnston, the person who terminated Plaintiff's employment, knew Plaintiff was a

Baptist. That there is no evidence that Mr. Johnston knew Plaintiff was a Baptist is fatal to his claim.[2]  See Morrison, 2014 WL 5286604, at *4.

It is also worth repeating that Plaintiff cites only to the Amended Complaint. Plaintiff's subjective belief that his co-workers and management knew he was a Baptist, without any

---

[2]    Plaintiff argues that Mr. Johnston's affidavit must be subject to a credibility determination by a jury because Mr. Johnston is an "interested witness, and therefore his affidavit cannot suffice as evidence in support of summary judgment for Defendant. Plaintiff raises this same argument throughout his response in opposition to Defendant's Motion. Citing to a footnote in Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005), Plaintiff presses that "when an employer moves for summary judgment even the uncontradicted testimony of interested witnesses supporting the employer, such as supervisors and other workers, should not be considered or otherwise weighed in the summary judgment balancing." (Pl.'s Resp. at 5.) The footnote in Hill states that "when evaluating a summary judgment motion a court should not consider even uncontradicted testimony of an interested witness where that witness supports the movant." Id. at 132 n.22 (citing Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 149-51 (2000)).

But, Plaintiff has not provided any evidence that Mr. Johnston's credibility should be questioned. Moreover, Plaintiff fails to acknowledge that the United States Court of Appeals for the Third Circuit has since addressed and clarified the above footnote language. In Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F. 3d 259 (3d Cir. 2007), the court reiterated that the non-moving party has the burden of "mak[ing] a showing sufficient to establish the existence of [each] element essential to [their] case." Id. at 271 (quoting In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002)). The court explained:

> We cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion which, of course, is not to say that when there is conflicting testimony the court may accept the testimony of one witness, even if a party, rather than another. Indeed, in Hill which appellants cite, we made our comment regarding disregarding testimony of interested witnesses after we explained that the case involved contradictory evidence. The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness.

Id. at 271-72.

Plaintiff's position would result in courts being unable to consider a defendant's testimony because he is an interested party, which the Lauren W. court recognized would be an illogical result. See also Wilkie v. Geisinger System Services, No. 12-580, 2014 WL 467489, at *5 n.8 (M.D. Pa. Sept. 18, 2014). I reject Plaintiff's argument as a misstatement of the law.

13

foundation, cannot substantiate his allegation or defeat Defendant's Motion. See Kier v. F. Lackland & Sons, LLC, 72 F. Supp. 3d 597, 609 (E.D. Pa. 2014). Rather, Plaintiff must come forward with evidence "'adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" See Pivirotto v. Innovative Systems, Inc., 191 F. 3d 344, 356 (3d Cir. 1999) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)).

Because Plaintiff has not met his burden of establishing a prima facie case of discrimination, I will grant Defendant's Motion as to Plaintiff's Title VII claim.[3]

### A. Plaintiff's FMLA Retaliation Claim

To state a claim for FMLA retaliation, plaintiff must allege that: (1) he took FMLA leave; (2) he suffered an adverse employment decision; and (3) the adverse employment decision was causally related to the leave. Greineder v. Masonic Homes of the R.W. Grand Lodge, F & AM of Pa., No. 13-2376, 2014 WL 1632143, at *5 (E.D. Pa. Apr. 23, 2014) (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d. Cir. 2004)). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in McDonnell Douglas[.]" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). Defendant contends Plaintiff has not presented any evidence to establish a causal connection between his FMLA leave and his termination.

---

[3] For the same reasons, I find that Plaintiff has failed to present evidence to establish a PFPO discrimination claim, which is analyzed using the same framework as a Title VII discrimination claim. Hong v. Temple Univ., No. 98-4899, 2000 WL 694764, at *9 (E.D. Pa. May 30, 2000), aff'd, 261 F.3d 492 (3d Cir. 2001).

In the FMLA retaliation context, where the "temporal proximity" between the protected activity and adverse action is "unusually suggestive," the Third Circuit has recognized that this "is sufficient standing alone to create an inference of causality and defeat summary judgment." Id., 691 F.3d at 307 (concluding that seven days between the protected activity and adverse action was "in the realm" of what the court had previously accepted as an unusually suggestive temporal proximity) (citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). "'Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Id. (quoting LeBoon, 503 F.3d at 232).

Here, Plaintiff asserts that his doctor sent a recommendation for an extension of his FMLA leave on May 28, 2014. Two days later, May 30, 2014, Plaintiff received a letter from Mr. Johnston stating that his employment was terminated as of May 29, 2014. Viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that the timing of Plaintiff's termination was "unusually suggestive" of a retaliatory motive to infer a causal link between his protected activity and the adverse action.[4]

Under the McDonnell Douglas framework, the burden now shifts to Defendant to articulate a facially legitimate, non-discriminatory reason for Plaintiff's termination. This "relatively light" burden is met "if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason."

---

[4] Defendant points out that Judge O'Neill dismissed Plaintiff's FMLA retaliation claim as it was pled in the original Complaint, finding Plaintiff "[could not] use the medical report to infer causation because it cannot be read as an attempt to request additional FMLA leave or exercise FMLA rights." (Doc. No. 8.) Importantly, Judge O'Neill explained that the original Complaint did not allege when Plaintiff's FMLA leave was originally supposed to conclude, nor did it allege the subsequent extension requests. Judge O'Neill permitted Plaintiff leave to amend his FMLA claim, which he did, including the dates missing from the original Complaint. (Am. Compl. ¶¶ 27-29.) Judge O'Neill subsequently found that Plaintiff had sufficiently alleged an FMLA retaliation claim. (Doc. No. 13.)

Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). Notably, a defendant "need not prove that the articulated reason actually motivated its conduct" at this stage. Id. Rather, "[t]he proffered reason need only raise a genuine issue of fact as to whether the employer acted impermissibly." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

Defendant has presented evidence that Plaintiff was terminated because he violated Defendant's Rules of Conduct, which prohibit threatening behavior, causing a disturbance, and harassment. Mr. Johnston's letter notifying Plaintiff of his termination cited two provisions that Plaintiff had violated: (1) D.16 – "Threatening Behavior or Causing Disturbance"; and (2) D.18 – "Harassment or Unwelcome Behavior." (Def.'s SOF, Ex. J.) Courts within this district recognize that unprofessional behavior and violation of internal company policies may constitute facially legitimate, non-discriminatory reasons for termination. See, e.g., Kim-Foraker v. Allstate Ins. Co., 834 F. Supp. 2d 267, 278 (E.D. Pa. 2011). Accordingly, I find that Defendant has met its "relatively light" burden of providing evidence that it terminated Plaintiff for a legitimate, non-discriminatory reason.

The burden of production now shifts back to Plaintiff to establish, by a preponderance of the evidence, that Defendant's proffered legitimate, non-discriminatory reason was pretextual. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644-45 (3d Cir. 2015). To establish pretext, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton, 707 F.3d at 426–27 (citing Fuentes, 32 F.3d at 764). At the pretext stage, "the factual inquiry into the alleged discriminatory motives of the employer [rises] to a new level of specificity." Willis, 808 F.3d at 650.

Regarding the first method of demonstrating pretext, if a plaintiff's evidence pertains to the credibility of the employer's proffered justification, the evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (internal citations omitted).[5] Thus, to discredit an employer's proffered reason(s), a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id.; Davis v. Pittsburgh Pub. Sch., 930 F. Supp. 2d 570, 601 (W.D. Pa. 2013) ("The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination.").

Plaintiff urges me to find the temporal proximity between his doctor's May 28, 2014 letter recommending an extension of FMLA leave and his termination as sufficient evidence of pretext. He also asserts that "the speed (or lack thereof) of [Defendant's] investigation of Chesney's threats and touching against [Plaintiff] versus the speed of [Defendant's] investigation of [Plaintiff's] alleged threat [against Mr. Chesney] reveals a continuous pattern of antagonism."[6] (Pl.'s Resp. at 12-13.)

---

[5] "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013). "This is because the factfinder may infer from the combination of the prima facie case, and its own rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason." Id. at 427.

[6] Relying on Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005), Plaintiff again contends I should disregard the affidavit of Mr. Johnston and Ms. Turner because he is an interested witness

While the timing between Plaintiff's doctor's letter and Plaintiff's termination was sufficiently proximate for Plaintiff to establish his prima facie case of retaliation, it is not enough to rebut Defendant's non-discriminatory explanation for firing him. It is undisputed that Plaintiff's May 5, 2014 encounter was reported to Mr. Johnston, who conducted an investigation wherein Plaintiff, Mr. Chesney, and Ms. Rimes were interviewed, the Temple Police Department incident report was reviewed, and video surveillance footage of the incident was viewed. Mr. Johnston concluded a violation of Defendant's Rules of Conduct had occurred and terminated Plaintiff by letter on May 30, 2014. Plaintiff's subjective belief that his conduct was not threatening is insufficient to overcome Defendant's articulated non-discriminatory reason. See Fuentes, 32 F. 3d at 765. Although Plaintiff's doctor sent his recommendation that Plaintiff's FMLA leave be extended within that time frame, Plaintiff has provided no other evidence from which a jury could conclude that his termination was because of his doctor's letter rather than his violation of the Rules of Conduct.

Plaintiff does not explain why the "speed" with which Mr. Chesney's complaint versus Plaintiff's complaint (regarding Mr. Chesney) demonstrates a pattern of antagonism. Plaintiff has failed to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reason for firing him, and his subjective belief that Defendant's reason for firing him was pretextual is not something on which I can rely. Ekhato v. Rite Aid Corp., 529 F. App'x 152, 156 (3d Cir. 2013). Plaintiff has failed to meet his

---

and thus his statement is subject to a credibility determination. As stated above, Plaintiff misstates Third Circuit precedent. Plaintiff has not presented any particular evidence calling into question Mr. Johnston's credibility. As such, for those paragraphs in Defendant's Statement of Undisputed Material Facts to which Plaintiff responds by relying on Hill, I will deem Plaintiff's "denials" as admissions.

burden of establishing pretext, thus I will grant Defendant's Motion for Summary Judgment as to Plaintiff's FLSA retaliation claim.[7]

## IV. **CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's Title VII discrimination claim, PFPO discrimination claim, and FMLA retaliation claim.

An appropriate Order follows.

---

[7]   In his additional Statement of Undisputed Material Facts, Plaintiff vaguely states—without providing any record citations—that Defendant's Code of Conduct applies only to work-related conduct and he was out on approved medical leave when the May 5, 2014 incident occurred. In the section of his brief addressing his Title VII discrimination claim, Plaintiff refers to Defendant's "Employment Manual" and "Collective Bargaining Agreement," and avers that "nothing" in either document indicates that a cause for termination exists while an employee is "not working." (Pl.'s SOF at p.7, ¶¶ 1-2; Pl.'s Resp. at 11.)

As Defendant points out, although Plaintiff was not performing his work-related duties when he encountered Mr. Chesney on May 5, 2014, his was still an employee of Defendant and as such, was bound by Temple's Rules of Conduct. See Crouch v. Whirlpool Corp., 447 F. 3d 984, 986 (7th Cir. 2006) (recognizing that because a defendant could terminate a plaintiff for a violation while he was at work, it could also terminate him when he was on leave). Significantly, it is Plaintiff's burden to demonstrate pretext and he has failed to direct me to a particular section of either Defendant's Employment Manual or the Collective Bargaining agreement that states that Defendant's Rules of Conduct are inapplicable to an employee who is out on medical leave. Plaintiff attaches these documents as Exhibit E (referenced elsewhere in his brief), but has not established where in those documents Defendant states that its Rules of Conduct are inapplicable to an employee who is out on medical leave. Plaintiff appears to conflate being on leave with not working, yet provides no authority from which I can conclude that an employee who is out on medical leave is considered to not be an employee.